Esteban GARCIA, Plaintiff,

v.

PLAINS COOP OIL MILL, INCORPORATED, Defendant.

Civ. A. No. CA–5–74–90.

United States District Court,
N. D. Texas,
Lubbock Division.

May 12, 1975.

F. B. Godinez, Jr., Lubbock, Tex., for plaintiff.

John Edward Price, Center, Colo., for defendant.

## MEMORANDUM

WOODWARD, District Judge.

This memorandum is being filed with the Clerk of this court after the court has heard and considered the evidence in the case, the pleadings of the parties, and the argument of counsel, and same shall constitute the court's findings of fact and conclusions of law.

The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

Plaintiff, Esteban Garcia (Garcia), filed his complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that the defendant, Plains Coop Oil Mill, Incorporated (Plains), who was his employer, committed certain acts of discrimination in violation of said Act while he was employed by the defendant. The parties stipulated that the plaintiff·is of the Mexican-American ethnic nationality and that all times material hereto the defendant was "an employer" within the meaning of said Act and that the defendant was the employer of the plaintiff from on or about March 9, 1969 until on or about June 16, 1971, with the exceptions below noted.

Plaintiff asks for both injunctive relief and damages and the court heard the case, without a jury, on the 8th day of May, 1975, at Lubbock, Texas.

The evidence in the case shows and the court finds the following to be the facts and conclusions of the court with respect to the law as a result of said findings:

Garcia was first employed by Plains on or about March 9, 1969 and went to work in its Plainview plant after requesting employment of the plant super-intendent. He was hired as a plain laborer at $1.60 an hour for 40 hours a week and would normally work an additional 8 hours for which he was paid the proper overtime. Garcia claims that he was eventually given a job as a heist or fork lift operator, but the court finds that there was no job classification as such an operator, but that all of those hired in the plain laborer class would at various times operate the fork lift if they were capable of doing so. Garcia would operate it on various occasions.

In February of 1970, an Anglo, who was employed as a plain laborer, operated the fork lift and Garcia felt that he had been removed from what he thought was his assignment claiming that the removal was because of his nationality and that preference was given to the white American. He complained but was told by his superiors that he would do the work assigned to him or that he could leave the job. He was off work about a week, and, after consulting a lawyer in Lubbock, went back to work loading sacks and doing other similar plain laborer tasks, including operating the fork lift on certain occasions. He was paid a bonus and given a vacation in 1970.

On September 2, 1970 the plant at Plainview did not have sufficient work and there was a general layoff of the employees, including those in Garcia's classification. In late October or early November, a letter was written to these employees, including Garcia, advising them that they could return to work. Mr. Garcia did not report back to work as he was employed at a gin and was making more wages at the gin. Later, on December 23, 1970, he went back to work at Plains and was given the status of a new employee instead of as an old employee, which was in accordance with the company policy. He continued to work in this capacity for Plains from that date until early June of 1971 and had received raises to·a rate of $1.75 an hour in June of 1971.

During this period Mr. Garcia requested that he be given additional pay

and on one occasion his superior offered him a job in the solvent operation of the plant, at a higher wage, but Mr. Garcia declined this because of adverse working conditions and perhaps personal danger in this operation.

Around the 1st of June, 1971, Mr. Franklin, the foreman, advised Mr. Garcia that three operators in the boiler room, known as prep operators, would be going on vacation and offered him a position as a relief operator during this period at an increase of salary to $2.10 per hour. He would be able to work from 48 to 56 hours on this shift which represented a considerable raise in pay to him. Mr. Garcia asked for a day or so to think it over and accepted the change in assignment. Although nothing was said or agreed upon, it was the intention of the foreman, that after the vacation schedule had been completed, Mr. Garcia would be continued in this type of work at this same rate of pay. The relief work on vacation schedule as well as the employment after vacations were completed involved working an 8:00 to 4:00, 4:00 to 12:00, and 12:00 to 8:00 schedule at various times.

Mr. Garcia worked the 8:00 to 4:00 day schedule for the weeks of June 2 and June 9 and was paid $1.75 the first week and $2.10 per hour the second week. On the first night that he was to report on the night shift, he failed to show up for work and in a conversation with his foreman stated that he was a family man and did not want to take the night assignments and refused to continue in the relief work. The foreman reminded him that he had accepted this change in assignment, the vacation plans had been made accordingly, and that unless he did as instructed his time card would be pulled at the end of the three days and that he would no longer have a job. This was confirmed by the plant superintendent when Mr. Garcia went to him to complain about the assignment.

The evidence shows that although Mr. Garcia received a vacation and bonus in 1970, a bonus in 1969, he did not receive any vacation time or any bonus for the year 1971 as it was the company policy to award these as of July 1st and Mr. Garcia was no longer in the employment of the company on that date.

Mr. Garcia did have some excused absences in the year 1971 because of family deaths but this had nothing to do with the termination of his employment.

Mr. Garcia states that he was either discharged or constructively discharged and that the reason for same was his national origin and that the discrimination against him began as far back as February 1970 when he claims that an Anglo was given preference over him in the operation of the fork lift.

The court does not feel that the incident in February of 1970 in any way contributed to or was a cause of his ultimate discharge and that this was a grievance that had been resolved as shown by Mr. Garcia's continued employment by the company for over a year before the final discharge. This incident could not have had anything to do with or be a cause of his discharge under the evidence in this case.

The evidence in the case further showed that Plains was an employer of a high percentage of minorities, both Blacks and Mexican-Americans, and the evidence convinces the court that there was no discrimination as to the rate of pay paid the minority employees. The pay scale in June of 1971 ranged from $1.75 an hour to $2.63 per hour. In the lowest rate of $1.75 per hour there were no minorities and only Anglos occupied this position. At the highest rate of $2.63, the positions were filled 50% by Anglos and 50% by minorities. In the classification of all those making over $2.00 an hour, it was shown that 73% were minority groups and 27% were Anglo. As a general practice and rule, there was no discrimination against minorities in the employment practices, including rate of pay, hiring, and promotion, on the part of Plains. The evidence shows that Mexican-Americans occupied some of the supervisory positions and it

is not the claim of Garcia that he should be given any supervisory position in this case.

■ The court finds that the termination of Garcia's employment with Plains on June 16, 1971 was caused solely by Garcia's refusal to work the night shifts even though he had previously agreed to do so and Plains had relied upon this arrangement in setting its vacation schedules for other employees. The evidence does not show that the termination was a result of any discrimination toward the plaintiff because of his national origin, race, or ethnic background. Garcia simply refused to do his assigned task even though he had previously agreed to the arrangement and even though he would earn considerably more money each week in this job. It makes no difference whether Mr. Garcia quit his job, was discharged, or was constructively discharged because, in any event, the termination of his employment by Plains was for good cause.

The evidence in the case shows that it was generally the practice of Plains to assign vacation schedules for all those working on July 1st of each year, but in the case of the prep operators vacations were assigned in June which would be contrary to the company policy. However, there is nothing to convince the court that this was a preference of one race over another or was in any way done in order to discriminate against the plaintiff or any of the minority employees, but was simply a practical procedure in the orderly operation of the plant and in fixing vacation schedules.

In reaching the above findings and conclusions, the court has considered all of the evidence introduced in this case, including a summary report of the E.E.O.C. However, this report consists mainly of conclusions and a contrary result of that report's findings and conclusions is reached by this court because the other evidence presented to the court at the trial is much more convincing and reasonable than that presented by the E.E.O.C. summary and report.

Accordingly, this court has concluded that Plains did not practice or use any discrimination against the plaintiff, Garcia, and that his discharge and the termination of his employment by Plains was not as the result of any discrimination toward the plaintiff because of his national origin, race, or ethnic background but, as found above, Plains terminated the employment for good and sufficient cause aside and apart from any acts of discrimination.

Accordingly, a judgment will be entered that the plaintiff take nothing.